# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.W. and W.O.**

**No. 18-0913** (Calhoun County 17-JA-14 and 17-JA-18)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.B., by counsel Betty Clark Gregory, appeals the Circuit Court of Calhoun County's September 5, 2018, order terminating her custodial rights to K.W. and her parental rights to W.O.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tony Morgan, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she did not successfully complete her post-adjudicatory improvement period and in terminating her custodial and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 4, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner's home was in a deplorable and unsanitary condition, that petitioner failed to provide the children with proper supervision, and that the children were dirty and bruised. Additionally, the DHHR alleged that a firearm was found in the home within the children's reach. The DHHR also suspected that the children were not receiving any education because they were allegedly home-schooled, but no educational materials were in the home. Lastly, the DHHR alleged that the children were exposed to domestic violence in the home.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

On September 28, 2017, petitioner stipulated to the allegations of abuse and neglect as set forth in the petition. She was subsequently granted a six-month post-adjudicatory improvement period, which commenced on December 6, 2017, upon the filing of the family case plan. Petitioner was provided with individual parenting training, individual therapy, domestic violence group classes, and individual domestic violence counseling. Also as part of her improvement period, petitioner was provided with random drug screens, a parental fitness evaluation, and supervised visits with the children.

On July 24, 2018, the circuit court held a dispositional hearing during which it addressed petitioner's motion for an extension of her post-adjudicatory improvement period as well as the DHHR's motion to terminate petitioner's parental rights. The parenting service provider testified that petitioner participated in parenting training, but failed to take responsibility for the abuse and neglect of her children and blamed others. The service provider testified that she believed petitioner could not make any parenting progress until she accepted responsibility for the abuse and neglect of the children. The domestic violence group coordinator testified that petitioner initially attended group classes, but stopped attending in May or June of 2018. The group coordinator testified that petitioner participated in the sessions she attended, but was often more focused on her "fight against [Child Protective Services ('CPS')]" than the issues of domestic violence. The group coordinator explained that petitioner failed to complete the program because she did not attend enough classes. The DHHR also presented testimony that petitioner continued to engage in volatile and inappropriate relationships during her improvement period. After separating from W.O.'s father, petitioner engaged in another violent relationship with a man who she admitted was abusive. Following that relationship, she moved in with a registered sex offender, who she continued to reside with at the time of the dispositional hearing. Next, a psychologist testified regarding petitioner's psychological evaluation. The psychologist opined that petitioner's prognosis for parental improvement was "extremely poor." The psychologist explained that the "extremely poor" prognosis was due to petitioner's lack of acceptance of responsibility, history of abusive relationships, and failure to benefit from services.

Petitioner testified that she did not see any problem with her live-in boyfriend being a registered sex offender because she knew the circumstances of his conviction. Further, she testified that her adult son was living in the home under probation supervision and was to have no contact with any children due to a criminal conviction of a sexual offense. Petitioner also testified regarding her perceived problems with CPS and their alleged failures in the case. Petitioner further testified that the parenting training provider did not think that petitioner needed parenting classes, contrary to the provider's testimony. Lastly, petitioner testified that she got a vehicle the previous weekend so that she could attend her domestic violence classes and that she and her live-in boyfriend were in the process of getting a bigger home.

In its September 5, 2018, dispositional order, the circuit court found that petitioner failed to successfully complete her post-adjudicatory improvement period and did not follow through with a reasonable family case plan or other rehabilitative efforts. The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because petitioner failed to acknowledge her role in the abuse and neglect of the children. The circuit court considered seventeen-year-old K.W.'s wishes and the guardian's recommendation and found that the children's best interests necessitated the

termination of her custodial rights to K.W. and her parental rights to W.O. Consequently, the circuit court terminated petitioner's custodial rights to K.W. and her parental rights to W.O. in its September 5, 2018, dispositional order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in finding that she failed to successfully complete her post-adjudicatory improvement period. In support, petitioner asserts that she "participated in random drug screens two to three times a week, parenting and adult life skills classes once each week, therapy once a week, weekly domestic violence classes, and visits with her children." However, petitioner fails to acknowledge that a service provider testified that after May or June of 2018, petitioner stopped attending domestic violence group classes and failed to complete the program. Additionally, petitioner fails to acknowledge that evidence was presented that she failed to take responsibility for the abuse and neglect of the children which prevented her from making improvements.

In regard to the circuit court's denial of petitioner's motion for an extension of her post-adjudicatory improvement period, West Virginia Code § 49-4-610(6) provides that the circuit court may grant a parent an extension of their improvement period when the parent "has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child." As discussed, petitioner failed to substantially comply with the terms and conditions of her post-adjudicatory improvement period. Also, we have held that

---

[2]K.W.'s father voluntarily relinquished his parental rights in 2017. W.O.'s father's parental rights were terminated. According to respondents, the permanency plan for seventeen-year-old K.W. is to reside in her current foster home until she reaches the age of majority. The permanency plan for W.O. is adoption in his current kinship placement.

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The record shows that petitioner failed to take responsibility for her role in the abuse and neglect of the children and was often distracted with her perceived shortcomings of CPS during parenting training. Additionally, the record shows that after May or June of 2018, she stopped attending domestic violence group sessions and failed to complete that program. Therefore, because she did not substantially comply with the terms and conditions of her improvement period, petitioner did not meet the applicable burden to receive an extension of her post-adjudicatory improvement period and the circuit court did not err in denying her motion for such.

Petitioner also argues that the circuit court erred in terminating her custodial rights to K.W. and her parental rights to W.O. In support, she contends that if she had been granted an extension of her post-adjudicatory improvement period, she would have completed "the steps to substantially correct the issues that lead to the filing of the petition." We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental and custodial rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[ren].

The evidence discussed above also supports the termination of petitioner's parental and custodial rights. As discussed, petitioner failed to substantially comply with the terms and conditions of her post-adjudicatory improvement period. Additionally, petitioner engaged in violent and inappropriate relationships during the proceedings and did not acknowledge that those relationships posed a risk to the children. Particularly, petitioner did not recognize the potential harm of living with a registered sex offender. Moreover, petitioner's psychological exam prognosis for parental improvement was "extremely poor" due to her failure to acknowledge the conditions of abuse and neglect, her history of inappropriate relationships, and her failure to benefit from services. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that the termination of her custodial rights to K.W. and her parental rights to W.O. was in the children's

best interests. Therefore, we find no error in the circuit court's termination of petitioner's custodial rights of K.W. and her parental rights of W.O.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 5, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison